HYDE (EDMONDSON v.). See Case No. 4,-285.

## Case No. 6,970.

HYDE et al. v. FIRST NAT. BANK.

[7 Biss. 156; 2 N. Y. Wkly. Dig. 342; 8 Chi. Leg. News, 262; 11 Bankers' Mag. (3d S.) 140; 2 Law. & Eq. Rep. 257.] [1]

Circuit Court, N. D. Illinois. April, 1876.

LIABILITY OF A BANK TO WHOM COMMERCIAL PAPER IS SENT FOR COLLECTION.

1. A second bank receiving the paper from the first and collecting the money on it, is not liable to the owner of the paper.

[Cited in Power v. First Nat. Bank (Mont.) 12 Pac. 604.]

2. On the deposit of a note with a bank for collection, a contract is implied between the owner and the bank, but this implied contract does not follow the note into the hands of the bank's collecting agents.

[Cited in First Nat. Bank v. Reno Co. Bank, 3 Fed. 265.]

3. The owner has no remedy against an agent of the collector.

[Cited in City Bank of Sherman v. Weiss, 67 Tex. 331, 3 S. W. 299.]

Action was brought to recover a certain sum of money, charged to have been collected from John Hutchins, by defendant for plaintiffs [Albert G. Hyde and others]. Plea, general issue. The case was tried by the court by stipulation.

Tenneys, Flower & Abercrombie, for plaintiffs.

Dent & Black, for defendant.

HOPKINS, District Judge. The evidence showed that John Hutchins, of Lacon, in this state, gave his note to the plaintiffs, residents of New York City, for $407.63, on the 15th day of September, 1874, payable in four months, at the First National Bank of Lacon, the defendant. The plaintiffs indorsed the note to the order of A. Hest, Esq., cashier, for collection for their own account. Hest then indorsed it to the defendant for collection for Cook County National Bank. Mr. Hest was the cashier of the Cook County National Bank, and sent the note in a letter to the defendant, on the 11th day of January, 1875, with instructions "to collect and credit." The defendants kept an account with the Cook County Bank, and then had a considerable sum in that bank. The note was paid to defendant on the 18th of January, 1875, and credited to the Cook County Bank, as other collections in the usual course of business. The defendant remitted, on that day, to the Cook County Bank, more money than this collection amounted to, and had at that time a large balance due it from that bank. The Cook County Bank failed on the 19th of January, but the defendants had no knowledge of its failure or embarrassment until about noon on the 19th.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 2 N. Y. Wkly. Dig. 342, contains only a partial report.]

The testimony also showed that the custom between that bank and defendant, and also between the other Chicago banks and their country correspondents, was to make collections of notes sent there for that purpose, and credit the proceeds to the bank transmitting them, that no account was kept with any other person of such paper sent for collection; that this custom prevailed as well when the paper was indorsed to the bank sending for collection on account of their own, as when indorsed generally; and that accounts of all such transactions, in all cases, were kept in the same way.

These are the substantial facts, and the law applicable as now settled by the supreme court of the United States, may be stated as follows: That when an owner of commercial paper sends it to, and it is accepted by a bank for collection, whether payable at the place where such bank is located, or elsewhere, in the absence of any contract to the contrary, there is an implied agreement with such bank arising from the acceptance of the employment, that it will perform all the acts necessary for the collection, and if not paid, of charging the parties thereto. It is not regarded as the appointment of the bank as the attorney of the owner of the paper, authorized to select other agents suitable and competent for the purpose of collecting the note, but on the contrary "its position is that of an independent contractor, and the instruments employed by such bank in the business contemplated, are its agents and not the agents of the owner of the note;" that its duty is not discharged when it selects responsible agents to perform the duty entrusted to it; that the owner of the paper is not to look to the responsibility of the agents entrusted by the bank with his collections; that the bank to which he commits the paper is alone answerable to him for the performance of all acts necessary to secure his rights, including the payment of the money when collected (Ayrault v. Pacific Bank, 47 N. Y. 570); and that the liability to pay over attaches as soon as the money is paid, either to it, or to a sub-agent selected by said bank to collect for it.

This being so, it follows that the owner is to look to his immediate contractor, and has no remedy against the under contractor or agent employed by the bank; that such agents or contractors have no privity of contract with the owner and are not liable to him, but are only liable to the party immediately employing them; in short, that the sub-agent employed by the bank owes no duty to the party who deposited the paper for collection with his principal, and hence is not responsible to him for any damages. This, I understand to be the effect and meaning of the late decision of the supreme court of the United States in the case of Hoover v. Wise [91 U. S. 308].

Although prior to that decision I had considered that the weight of authority was in favor of the owner's having a right of action against the party who actually collected the money upon the note, although a secondary agent, unless he had paid it before notice of the owner's claim, or had made advancement upon the paper to the party from whom he received it in such a way as to enable him to hold the proceeds on the ground that he was a bona fide holder of the paper for value.

But this decision, by declaring that a secondary agent is not liable at all to the owner, completely overthrows the theory upon which such supposed liability was based, and excludes the consideration of the question of the rights of such agent, as against his immediate principal, and renders immaterial the question as to whether he knew the bank employing him was the owner of the paper or not, for not being answerable to the owner in any case, without some arrangement changing the implied contract arising from the said employment to collect, it is unimportant to the owner to inquire what right such agent may have against his employers.

In the case of McBride v. Farmers' Bank, 26 N. Y. 450, a recovery was had against the secondary agent, which, at first, seems to be in conflict with the earlier New York cases cited, and followed in the opinion of the United States supreme court above mentioned. But on examining that case carefully, it appears that the bank gave an order to the owner of the paper, or its agent, for the notes, before the payment of the notes, and that he demanded them of the agent before payment, and that the failure of the bank was before payment, which distinguishes it from the case cited, and from this also; for here the money was collected by the defendant before the Cook County Bank failed, and was by this defendant passed to the credit of that bank the day before the failure, so that the Cook County Bank's liability to the plaintiff for the money attached before its failure, which brings the case in my judgment, clearly within the doctrine of Hoover v. Wise, supra.

It is difficult to reconcile this decision with that of Dickerson v. Wason, 47 N. Y. 439, and Sweeny v. Easter, 1 Wall. [68 U. S.] 166. But it is not for me to reconcile these cases; the case of Hoover v. Wise being the latest expression on that subject, it must be regarded as the law, by this court.

The defendant is, therefore, entitled to a judgment.