### TAYLOR & BOURNIQUE CO. v. NATIONAL BANK OF ASHTABULA.

(District Court, N. D. Ohio, E. D.   December 27, 1919.)

#### No. 10201.

1. COURTS ⬧372(7)—COLLECTING BANK'S LIABILITY AS COLLECTOR GOVERNED BY GENERAL LAW, NOT STATE DECISIONS.

On a question of general law, as the liability of a bank accepting for collection commercial paper, the federal courts are not bound by decisions of the state in which the contract was made, or to be performed, but must determine the question of liability by reference to all the authorities.

2. BANKS AND BANKING ⬧171(6)—LIABILITY OF BANK COLLECTING COMMERCIAL PAPER FOR ACTS OF CORRESPONDENT.

A bank receiving commercial paper in one state for collection in another is liable for any neglect of duty occurring in its collection, whether arising from the default of its own officers or employés, or from that of its correspondent, and while this obligation may be modified by contract, a modification will not be inferred from knowledge that the receiving bank must, or intends in due course of business to, forward the paper to another bank for collection.

3. BANKS AND BANKING ⬧175(½)—OWNER OF COMMERCIAL PAPER CANNOT SUE CORRESPONDENT SELECTED BY BANK TO WHICH PAPER WAS DELIVERED FOR COLLECTION.

Where a correspondent selected by a bank with which was deposited commercial paper for collection is negligent, and the owner suffers a loss,

---

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the owner cannot in his own name sue the negligent correspondent, but his right of action is against the bank with which he deposited the commercial paper.

At Law. Action by the Taylor & Bournique Company against the National Bank of Ashtabula. On demurrer. Demurrer to petition sustained.

H. E. Starkey, of Jefferson, Ohio, and Charles J. Ford, of Geneva, Ohio, for plaintiff.

Green & Gallup, of Cleveland, Ohio, and Mott G. Spaulding, of Ashtabula, Ohio, for defendant.

WESTENHAVER, District Judge. The defendant demurs to the plaintiff's petition on the ground that a cause of action is not stated. The petition in substance alleges that on the 14th day of March, 1918, plaintiff delivered to the Wisconsin National Bank at Milwaukee, Wis., for collection, four drafts, payable on demand, aggregating $12,533.45, drawn by plaintiff on the Horton Milling Company of Ashtabula, Ohio, payable to the order of the Wisconsin National Bank, with bills of lading attached, for four cars of No. 3 white corn, sold by the plaintiff to the said Horton Milling Company; that the Wisconsin National Bank duly forwarded these drafts to the defendant at Ashtabula, Ohio, for collection; that the defendant carelessly and negligently held them until about May 6, 1918, without making any demand for payment or acceptance, and without making any report or giving any notice of its failure to act; that as a result of this conduct the four cars of corn were permitted to lie on the side tracks of the railroad carrier until the corn had become heated and damaged, and was no longer of the grade and quality originally sold and shipped; and that the Horton Milling Company refused on May 6, 1918, to accept the corn or to pay the drafts. Plaintiff seeks to recover damages based on this negligent conduct of the defendant.

Upon this demurrer plaintiff contends that the law of Wisconsin is to govern, and that this law is what is known as the Massachusetts rule, applicable to the liability of a bank accepting commercial paper for collection. On the other hand, the defendant contends that the case is governed by the law of Ohio, which is the same as that known as the New York rule. No statute of Wisconsin is cited or claimed to be in force creating any special rule different from the general law of commercial paper. The law of Wisconsin invoked by plaintiff results from the decisions of its Supreme Court. See Stacy v. Dane County Bank, 12 Wis. 629; Blakeslee v. Hewett, 76 Wis. 341, 44 N. W. 1105.

The argument before me turns chiefly on whether or not there is any conflict in the decisions of the Surpeme Court of Wisconsin and of Ohio, and, if so, which line of decisions shall be followed—the plaintiff contending that, inasmuch as its contract was made in Wisconsin with the Wisconsin National Bank of Milwaukee, and was to be partly performed there, that the law of that state should control; and the defendant contending that, inasmuch as Ohio was the place

where the contract was to be performed, and the place where defendant's contract, if any, was made, the Ohio law should control.

[1] In my opinion, the true question of law upon which the case turns is not that assumed by counsel. There is, in my opinion, no question involved of conflict in law, and therefore no inquiry need be made as to where the contract was made, or by the law of what state or forum it is to be controlled. The applicable rule is that stated in Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; B. & O. Railroad v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772. The rule thereby established is that, when the question is one of general law, and not of. purely local law, it is to be determined by reference to all the authorities, and upon due consideration of the principles of general jurisprudence applicable to the subject, and not by reference merely to those of the state in which the cause of action arose.

Swift v. Tyson, supra, involved the question of whether or not one who acquired negotiable paper for a pre-existing debt in due course before maturity and without notice of any defense thereto was to be regarded as a holder for value. The cause of action arose in New York, by the decisions of which one taking a note for a pre-existing debt was not regarded as a holder for value. It was held that this was a question, not of local law, but of general commercial law, and was to be decided upon an examination of all the authorities and due consideration of the principles underlying the general commercial law of the land. The result was that the United States Supreme Court held in that case that one taking negotiable paper for a pre-existing debt was a holder in due course. Mr. Justice Story, delivering the opinion, says that the laws of the state, which were made by the original Judiciary Act the rule of decision in the United States court, mean state laws, strictly local; that is to say, positive statutes of the state and the construction thereof adopted by the local tribunals, and decisions relating to rights or titles to things having a permanent locality, such as the rights and titles to real estate and other matters immovable and intraterritorial in their nature and character.

In B. & O. Railroad v. Baugh, supra, this and all the intervening cases were fully reviewed, and the law reiterated to the same effect. It was therein held that the rule of fellow servancy in negligence cases was not a question of local law, but of general jurisprudence, and that the Ohio vice principal rule would not be followed and applied in the United States courts, even when the injury was sustained and the cause of action arose in Ohio after the pronouncement by its Supreme Court of that rule. It results that, if the United States Supreme Court has declared a rule applicable to the present controversy, it must control, and hence it is immaterial to inquire whether the so-called New York or Massachusetts rule is the true rule, or which has been adopted in Ohio.

[2] Upon this proposition there can be no doubt. See Hoover v. Wise, 91 U. S. 308, 23 L. Ed. 392; Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722. Neither of these cases has ever been overruled, criticized, or distinguished, and while I do not find that the question involved has ever again been

under consideration by the Supreme Court, I do find that these cases have ever since been uniformly followed by all inferior federal courts. The law, as established by these cases, is that a bank receiving commercial paper in one state for collection in another state from a maker or drawer residing there is liable for any neglect of duty occurring in its collection, whether arising from the default of its own officers or employés, or from that of its correspondent or its agents in another state. This obligation, it is true, may be modified by contract; but a modification of the bank's obligation will not be inferred from knowledge that the receiving bank must, or intends, in due course of business, to forward the same to another bank for collection. The sound reasoning and policy upon which this rule rests is sufficiently stated in Exchange National Bank v. Third National Bank, supra, and in Reeves v. State Bank, 8 Ohio St. 465.

The contrary doctrine is that a bank receiving commercial paper and performing these duties is merely obliged to exercise due care in the selection of competent agents and in the transmission of such paper with proper instructions. The result of this doctrine is that the receiving bank is impliedly authorized to select subagents, who thereby become agents of the owner of the paper, and is not liable for the neglect or default of its subagents. On the other hand, under the correct doctrine as established by the decisions above cited, the receiving bank contracts to make collection, and is, in effect, an independent contractor, which may avail itself of such agencies as are necessary or proper in the performance of its contract, but remains itself liable to the owner for due performance by its agents or representatives thus employed, and they do not become subagents of the owner; nor is the receiving bank exonerated from liability to the owner, no matter what degree of care or diligence it exercises in selecting its agents.

The case of Bank of Washington v. Triplett, 1 Pet. 25, 7 L. Ed. 37, sometimes cited as holding the contrary, is distinguished, on the ground that the bank, upon the facts, was held to have contracted directly with the holder of the bill to collect it, and that the forwarding bank was the holder's agent merely to transmit the bill for collection. This is also the doctrine in Ohio. See Reeves v. State Bank, 8 Ohio St. 466. This case has been followed once, and the law therein stated has been approved twice in later cases. There is nothing to the contrary in Hilsinger v. Trickett, 86 Ohio St. 286, 99 N. E. 305, Ann. Cas. 1913D, 421, as contended on behalf of plaintiff. In this case, Judge Spear, delivering the opinion, says that it is unnecessary to consider the proposition stated in Reeves v. State Bank, supra, because neither the bank taking the paper for collection nor the bank to which it was forwarded was shown to be guilty of any neglect of duty, and, further, no loss to the owner had resulted from the alleged negligence.

[3] Thus far there is no difficulty. The question, however, remains to be considered whether or not the real owner may maintain an action against the bank or agent to which the paper was forwarded by the bank first taking it for collection, as well as against the receiving bank. It is undisputed that the owner may maintain an action against the receiving bank. The apparent difficulty in plaintiff's situation has

impelled me to give the most careful consideration to this question. As a result, I am of the opinion that plaintiff may maintain an action only against the bank with which it made its contract for collection, and not against any other bank to which the receiving bank forwarded it, based on the latter's negligence or breach of duty, as a result of which collection was not made. This conclusion is amply supported by the following authorities: Hoover v. Wise, 91 U. S. 308, 23 L. Ed. 392; Hyde v. First National Bank, 7 Biss. 156, 12 Fed. Cas. 1110, No. 6970; Balcomb v. Old National Bank (C. C. A. 7) 201 Fed. 680, 120 C. C. A. 27; Montgomery County Bank v. Albany City Bank, 7 N. Y. 459; Morris v. First National Bank of Allegheny, 201 Pa. 160, 50 Atl. 1000; note of Editor, 50 Am. St. Rep. 123, 124. This proposition is also explicitly held in Reeves v. State Bank, 8 Ohio St. 466, 483. The dissenting opinion of Judge Sutliff conceded this to be the correct rule when applied to an action based on failure to collect, due to negligence or breach of duty. See, also, 1 Mechem on Agency, § 333; 1 Daniel, Negotiable Instruments, § 344; note, 52 L. R. A. (N. S.) 663. The holding, in brief, of these authorities, is that whenever the doctrine of Exchange National Bank v. Third National Bank, supra, otherwise called the New York rule, is adopted, the owner's right of action for failure to collect, due to negligence, is limited to the bank with which the holder made his contract for collection.

The legal principles upon which these decisions rest are fundamental. The receiving bank, being in effect an independent contractor, has control of the means and agencies necessary and proper to perform its contract. The principal assumes no responsibility for the acts or conduct of the agents selected by an independent contractor. There is no privity of contract between the principal and the agents of the independent contractor. If the principal sustained to them such privity as would permit him to maintain an action against them, then he would become in law responsible for their acts and conduct. They might sue him for compensation, and he might be sued by strangers for their acts. He would be bound by their admissions while acting within the apparent scope of their authority. Notice to them would be notice to him. These principles are too important to be unsettled, out of consideration for the inconvenience which plaintiff may suffer as a result of what must be regarded as erroneous decisions of the Supreme Court of Wisconsin.

This opinion might end here, but, to avoid possible future misunderstanding, a word should be added with reference to those cases which hold that the owner of a negotiable paper may, under some circumstances, maintain an action against a bank to which the paper has been sent by a receiving bank to recover money collected thereon in an action for money had and received. In Reeves v. State Bank, supra, this right was denied. Judge Sutliff dissented, solely on the ground that no privity of contract was necessary to support an action by the real owner for money had and received against one who had no superior right to retain it. Other cases hold that, before remittance to the receiving bank, the latter's agency may be revoked, and that an action for money had and received may be maintained against

the bank to which it is sent, if no advances have been made by the latter thereon. See cases cited, note of editor, 50 Am. St. Rep. 123, 124, and note, 52 L. R. A. (N. S.) 663–665. It is unnecessary, as between this conflict, to determine which line of cases declare the correct rule. It is sufficient to point out that none of them have any application to an action based on negligence, as a result of which collection was not made.

The demurrer will be sustained. An exception may be noted. Leave to amend, if desired, will be given.